STATE, Respondent v. ASCHMELLER, Appellant

(209 N.W.2d 369)

(File No. 10996. Opinion filed July 12, 1973)

Gordon Mydland, Atty. Gen., **William Srstka**, Asst. Atty. Gen., Pierre, **George Weisensee**, State's Atty., Sioux Falls, for plaintiff and respondent.

**Braithwaite, Cadwell & Braithwaite**, Sioux Falls, for defendant and appellant.

DOYLE, Justice.

The defendant was charged with murder in two counts. Count I charged defendant under SDCL 22-16-4, murder with premeditated design, and Count II charged defendant under SDCL 22-16-9, murder while engaged in the commission of a felony. The defendant pled not guilty to both charges. The jury returned a verdict of not guilty on the charge of premeditated murder but found the defendant guilty of murder while engaged in the commission of a felony. From this conviction and a sentence of life imprisonment, defendant appeals.

The murder victim, Stella Van Broeke, operated a small tavern in the City of Sioux Falls, South Dakota. She occupied the rear portion of the building as personal living quarters. At approximately 8:20 a.m. on November 23, 1970, she was discovered in her apartment lying on the floor with her clothing on fire. She had been stabbed, choked and saturated with gasoline which had apparently been ignited by her assailant. She was taken to a local hospital, but was dead upon arrival.

The defendant was apprehended and questioned by members of the Sioux Falls Police Department on February 10, 1971. At first the defendant denied the killing, but he subsequently made a six-page confession in which he admitted the acts causing the death of Stella Van Broeke. At the trial defendant repudiated his former confession and claimed it was not given voluntarily.

During the trial the defendant was provided with an independent hearing on the question of whether or not his confession was voluntary. This procedure is mandated by State v. Thundershield, 83 S.D. 414, 160 N.W.2d 408, and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. At this hearing the trial judge specifically found the confession to be voluntary and admitted it into evidence for consideration by the jury as to the weight and credibility of the confession together with all the other facts and circumstances in accordance with the orthodox view expressed in State v. Thundershield, supra. We agree with the trial judge's finding, and see no reason to disturb his ruling.

The defendant claims the confession was not proven voluntary beyond a reasonable doubt, although he concedes that there was considerable evidence to support the state's contention that it was given voluntarily. We do not agree with defendant's position. He was given the Miranda warning; he was advised of his right to remain silent and have a lawyer present if he so desired. He apparently understood these rights, voluntarily waived them and gave a six-page detailed confession of the events which led to the death of Stella Van Broeke. No force was used to obtain this confession. A review of all the evidence in the record shows there was ample evidence to sustain the trial judge's finding that the confession was voluntary beyond a reasonable doubt. We agree with the conclusion of the trial court.

 Another error claimed by the defendant is that since he was convicted of murder while engaged in the commission of a felony, in this case the felony of grand larceny, the court's Instruction No. 25 did not properly define grand larceny. SDCL 22-37-1 provides:

> "*Larceny defined.*—Larceny is the taking of personal property accomplished by fraud or stealth and with intent to deprive another thereof."

The defendant contends that the court's Instruction No. 25 did not follow Pattern Instruction 3-7-370(a) found in our Criminal Pattern Jury Instructions. That instruction states:

> "2. That such taking by the defendant was accomplished by stealth, that is, secretly and without knowledge or consent of the owner."

The instruction the court gave defined "stealth" to be without knowledge or consent of the owner, and it omitted the word "secretly". The omission of the word "secretly" is the grave and prejudicial defect defendant claims. In our opinion "stealth" is a word of common meaning and is sufficiently defined by the use of the words, "without the knowledge or consent of the owner". The defendant admits that the word "secret" is a synonym for the word "stealthy". Thus, it appears to us to be merely superfluous to require a synonym to be used to define a word that is clearly understandable. In this case the taking of the money occurred while the owner's back was turned and the intent to deprive the owner thereof is evidenced by the fact that the defendant attempted to escape through the rear door. It was for the jury to decide whether or not these statements in the confession were true. If the jury found them to be true they constituted a taking by "stealth" within the meaning of the statute. State v. Christiansen, 46 S.D. 61, 190 N.W. 777; Adams v. Commonwealth, 153 Ky. 88, 154 S.W. 381; and 50 Am.Jur.2d, Larceny, § 12, p. 163.

 The defendant further finds error in Instruction No. 25 because the trial court in listing the circumstances under which larceny constitutes grand larceny stated:

"Grand larceny is larceny committed in any of the following cases;

(1) When the property taken is of a value exceeding fifty dollars;

(2) When such property, although not of a value exceeding fifty dollars, is taken from the person of another."

Defendant claims that (2) above should not have been included as there was no testimony that the defendant took property "from the person" of Stella Van Broeke. The defendant concedes "all the testimony points to the defendant's taking being from the cash register and drawer while Stella Van Broeke's back was turned * * *".

There was evidence introduced which could warrant the jury finding that defendant took well over fifty dollars under (1) above. Defendant admitted in his confession that he took over $700. This question was for the jury to decide on all the evidence. Even if the jury decided he did not take this amount the instruction (2) was not in error, for in order to constitute grand larceny it is not necessary that the stolen property be taken directly from "the person" of the owner as defendant contends. It is sufficient if the property be taken without the knowledge and consent of the owner while the property is within the possession and immediate presence of the owner. 52A C.J.S. Larceny § 11, p. 433; State v. Kobylasz, 242 Iowa 1161, 47 N.W.2d 167.

 The defendant also asserts the trial court erred in admitting into evidence two colored photographs of the mutilated body of the murder victim in that they had little probative value and were merely cumulative evidence. The admission in evidence of these photographs was within the sound discretion of the trial court. State v. Zobel, 81 S.D. 260, 134 N.W.2d 101, cert. den. 382 U.S. 833, 86 S.Ct. 74, 15 L.Ed.2d 76. In a prosecution for murder it appears to be a well-established rule that photographs of the victim duly verified, are, in the discretion of the trial court, admissible in evidence as an aid to the jury even though

such photographs may have the additional effect of tending to excite the emotions of the jury, as defendant claims they did in this case. State v. Iverson, 1971, N.D., 187 N.W.2d 1.

Furthermore, the accuracy of the photographs was not questioned by the defendant. Their admissibility was in the discretion of the court and we can find no error in the court's admission of them.

The defendant claims the court erroneously admitted an awl in evidence since the state failed to prove an unbroken chain of control over the awl from the time it was originally picked up at the scene of the crime until it was produced at the trial of the defendant. It appears from the record that the fingerprint and identification expert for the state picked up the awl at the scene of the crime on November 23, 1970. He did not mark the awl; however, he did put it into a container, marked the container and marked a tag, which he sent to the F.B.I. At the trial the awl was produced in the identical container and with the identical tag returned from the F.B.I. The defendant claims that since the awl was out of the possession of the fingerprint expert the chain was broken and it should not have been admitted into evidence as there was no positive identification made that it was the actual awl picked up at the scene of the crime. The defendant relies on dictum expressed in the case of State v. Weltha, 228 Iowa 519, 292 N.W. 148, where the court held that it was error to receive in evidence the blood sample and the testimony of experts based thereon taken from the defendant while he was unconscious and not under arrest. The court went on to say: "What we have said makes it unnecessary to consider defendant's complaint that the blood sample was introduced without sufficient proof of identity". The court further stated that the blood sample had passed through many hands before it came into possession of the expert who testified at the trial that the blood was in the same condition as it was when he got it.

In the case before us we have a different set of facts. The fingerprint expert took the awl, placed it in a container, which he. marked, tagged it and sent it to the F.B.I. At the trial the same expert identified the container and the tag and stated that the awl looked identical. In the admission of a physical

article which is rationally probative as to issues in a case, the trial judge must be satisfied in reasonable probability that the article has not been changed in important respects. In arriving at his conclusions he must consider the nature of the article, the circumstances surrounding its preservation, its custody and the likelihood of intermeddlers tampering with it. State v. Christmas, 1968, 83 S.D. 506, 162 N.W.2d 125, and State v. Parker, 261 Iowa 88, 151 N.W.2d 505. In this case, the court, acting in its discretion, could reasonably infer that the awl that was sent to the F.B.I., a government agency familiar and trained with preserving exhibits, was the same awl that was returned to the courtroom with the identical container and tag. It would be hypertechnical to exclude the exhibit offered here under the circumstances.

However, we agree with the state's contention that even if the admission was erroneous it was harmless to the defendant. State v. Kingston, 1970, 84 S.D. 578, 174 N.W.2d 636, and State v. Watts, 1971, 85 S.D. 638, 188 N.W.2d 913.

 The last point of error defendant claims is that he could not be convicted of felony-murder where the only evidence of commission of a felony was contained in his confession. Defendant states that there was no corroboration of his confession admitting he took more than $50 and no independent corroboration that he took from "the person" of Stella Van Broeke a sum under $50; therefore, the state failed in its burden of proof with respect to an essential element of the crime of felony-murder, namely, commission of grand larceny.

The general rule that an accused may not be convicted on his own uncorroborated confession has been recognized in our courts, Warszower v. United States, 312 U.S. 342, 61 S.Ct. 603, 85 L.Ed. 876; Isaacs v. United States, 159 U.S. 487, 16 S.Ct. 51, 40 L.Ed. 229; and has been consistently applied in the lower federal courts and in the majority of state courts. Annotation 127 A.L.R. 1130. The purpose of this rule is to prevent "errors in conviction based upon untrue confession alone". Warszower v. United States, supra.

The corroboration rule at its inception served an extremely limited function. In order to convict of serious crimes of violence, independent proof in regard to the substance or foundation of the crime, the so-called "corpus delicti" was required. Once the existence of the crime was established, however, the guilt of the accused could be based on his own otherwise uncorroborated confession. This is the rule in the majority of the jurisdictions and is the stricter form of the rule. A few jurisdictions do not limit the rule to evidence concerning the "corpus delicti", but the corroborating facts may be of any sort whatever, provided only that they tend to produce a confidence in the truth of the confession.

We hold that under either of these two lines of proof sufficient corroboration was shown to permit the case to go to the jury.

Upon the record the defendant's conviction is affirmed.

All the Justices concur.